## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## 1:08cv464

| | | |
|---|---|---|
| **ROBERT H. DAVIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **Vs.** | ) | **ORDER** |
| | ) | |
| **STATE FARM MUTUAL** | ) | |
| **AUTOMOBILE INSURANCE** | ) | |
| **COMPANY; and LEE STARNES,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the court on plaintiff's Amended Motion to Remand (#11). Defendants timely filed their response to the plaintiff's motion (#13) and the motion is now ready for decision. A hearing was conducted on such motion on February 5, 2009, at which counsel for the respective parties argued the merits of the motion.

## FINDINGS AND CONCLUSIONS

## I.      Summary of Issue Presented

In sum, plaintiff argues that this action was improperly removed inasmuch as there is not complete diversity among the parties. Specifically, plaintiff points to presence of defendant Lee Starnes, who is without doubt a resident of the State of

North Carolina. In response, defendants argue that Defendant Starnes' presence in this action does not divest this court of jurisdiction inasmuch as plaintiff fraudulently joined Defendant Starnes. Defendants have argued that under current North Carolina law, a cause of action cannot be maintained against an insurance agent for supposed failure to offer to UIM coverage; rather, such a claim must be brought against the insurer. Defendants have also argued that any possibility of a viable claim against the agent is rendered moot by the claim against the insurance company, explaining that if plaintiff is successful on his claim, there would be no additional claim against the agent, and if plaintiff is unsuccessful against the insurer, such a claim against the agent would be precluded. The issue squarely presented by plaintiff's motion is if there is any possible claim against the agent, then remand is required inasmuch as there can be no diversity.

## II.    Factual Background

In the plaintiff's Complaint, the plaintiff alleges that he is a citizen and resident of Haywood County, North Carolina, and that the defendant State Farm Mutual Automobile Insurance Company is a Delaware corporation issuing policies and adjusting claims in North Carolina. Pltf's Cmpt. ¶¶ 1 & 2. The plaintiff also alleges in his Complaint that the defendant, Lee Starnes is a citizen and resident of Haywood, North Carolina. Pltf's Cmpt. allegation #3. The plaintiff alleges that he is the sole

name insured on an automobile insurance policy that was issued by State Farm and which was sold to the plaintiff by Starnes. ¶ 6. It is the plaintiff's contention that the plaintiff purchased automobile liability insurance with policy limits above the statutory minimum liability limits, but neither the defendant State Farm nor the defendant Starnes presented the plaintiff as the sole insured with an opportunity to select or reject uninsured motorist coverage as require by law. ¶ 7. It is the plaintiff's contention that the defendant Starnes was acting as an agent of the defendant State Farm in regard to offering underinsured motorist coverage to the plaintiff. ¶ 4. During the period that the policy was in effect, plaintiff alleges that he was injured in an automobile accident and he has made a claim for underinsured motorist coverage against State Farm. The defendant State Farm contends the plaintiff rejected underinsured motorist coverage based upon the fact that the plaintiff's wife, who was not an insured, signed a rejection-selection form that had been presented by the defendant Starnes to the plaintiff's wife. ¶¶ 8 & 9.[1] Based on the oral arguments, it is likely that defendant State Farm will contend that such rejection by plaintiff's wife satisfies the statutory requirement because she was purportedly acting as his agent in both acquiring additional coverage and executing the supplied form.

---

[1] The plaintiff's wife was the tortfeasor whom the plaintiff has claimed caused his injuries as a result of her negligent operation of the plaintiff's motor vehicle while he was a passenger in that vehicle. (Affidavit of Lisa Echevarra ¶¶ 3, 4 & 5)(#13-5).

## III. The Claims Asserted by Plaintiff in the Complaint

In the Complaint, plaintiff's has asserted as his First Claim for Relief a request for a declaratory judgment concerning UIM coverage. In support of such claim, plaintiff contends that he was the sole named insured on the automobile liability insurance policy and he never signed or executed a rejection-selection form rejecting underinsured motorist coverage nor did he authorize or consent to his wife signing the form on his behalf. ¶¶ 17, 18 & 19. He further alleges that he was never presented with the opportunity to select or reject underinsured motorist coverage as required by law. ¶ 14.

Plaintiff's second cause of action is captioned "Second Alternative Claim for Relief - Negligence." The plaintiff alleges that the defendant Starnes had a duty of care to present the plaintiff with an opportunity to reject or select underinsured motorist coverage, that Starnes breached this duty by failing to provide the plaintiff with the opportunity to select or reject the underinsured motorist coverage; and, as a result, plaintiff lost the underinsured motorist coverage to which he would otherwise have been otherwise entitled. ¶¶ 24, 25 &26. In this second alternative claim for relief, the plaintiff alleges that should he not prevail on his action for a declaratory judgment against State Farm then, in the alternative, the negligence of the defendant Starnes was a direct and proximate cause of the plaintiff's lack of having

underinsured motorist coverage and that he is entitled to compensatory damages from the defendant Starnes. ¶ 27.

## IV.   Defendants' Joint Answer

The defendants filed a joint answer through one attorney.  The defendants', in responding to plaintiff's allegation that Defendant Starnes was acting as an agent of the defendant State Farm, answered as follows:

> Admitted that Defendant Starnes was, at times relevant to the Complaint, an independent contractor in the business of procuring applications for insurance policies to be issued by State Farm or its affiliated entities.

Deft's Answer ¶ 4.  The defendants answer further by stating that the plaintiff authorized his wife to act on the plaintiff's behalf. They further contend that  the plaintiff's wife signed a form rejecting underinsured motorist coverage and the signature of the plaintiff's wife rejecting the underinsured motorist coverage should bind the plaintiff.  Answer ¶¶ 30, 31, 32 & 33.  The defendants further raised the defenses of estoppel, contributory negligence, and other defenses.

## V.   Evidentiary Materials Submitted

At the time the defendants filed their responsive  brief they also filed the affidavit of Lee Starnes. (#13-3).  In his affidavit, Mr. Starnes states that he is an independent contractor in the business of procuring applications for insurance

policies to be issued by State Farm or it's affiliated entities and he operates a State Farm agency. Starnes Aff. ¶ 2. Mr. Starnes further avers in his affidavit that the plaintiff had never before the date of his automobile accident, that being November 4, 2007, requested that Mr. Starnes procure for the plaintiff underinsured motorist coverage.

There was also filed by the defendants the affidavit of Pamela Pressley (#13-6). Ms. Pressley states that she was the person who assisted in increasing the liability limits of the plaintiff's insurance policy in September of 2001. Ms. Pressley states in her affidavit as follows:

> 5. The standard practice for individuals who work for Mr. Starnes where the customer increases liability limits is to present the customer with a Selection/Rejection form. When the liability limits are changed, our office policies require that we have the person requesting an increase in liability coverage sign a Selection/Rejection form.

> 6. I have seen the Selection/Rejection form that Velda Davis signed on behalf of the plaintiff in September, 2001. The form has my name on it where I signed for Lee Starnes. A copy of that Selection/Rejection form is attached as Exhibit A.[2]

> 7. I have no recollection that either Plaintiff Robert Davis or his wife, Velda Davis, ever asked for underinsured motorist coverage from me prior to Plaintiff Robert Davis's accident of November, 2007. Aff. Pamela Pressley ¶¶ 5, 6 &7.

---

[2] The form is not attached to the affidavit but the form was attached to the joint Answer of the defendants.

## VI.   Standard of Review

The plaintiff has filed a Motion to Remand pursuant to 28 U.S.C. § 1447(c) which states:  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."   The defendants removed this action contending that this court has jurisdiction of this matter based on complete diversity under 28, United States Code, Section 1332, which provides as follows.

    (a)    The district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of   $75,000 exclusive of interest and costs, and is between --

        (1)    Citizens of different states;

 28 U.S.C. § 1332.

 In <u>Capparelli v. Amerifirst Home Improvement Finance Co</u>., 535 F.Supp.2d 554 (E.D.N.C., 2008), the district court addressed the duty of the reviewing court when presented with a motion for remand that involves an allegation by the removing party that a defendant was fraudulently joined:

In <u>Capparelli</u>, the district court succinctly set forth the factors and standards the court is to use to determine whether there has been fraudulent joinder:

> To determine whether joinder is fraudulent, "the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." <u>AIDS Counseling & Testing Ctrs. V. Group W Television, Inc.</u>, 903

F.2d 1000, 1004 (4th Cir. 1990) (quotation omitted). A defendant who alleges fraudulent joinder "bears a heavy burden because it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." Hartley, 187 F.3d at 424. "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." Id.

Id., at ___.

## VII. Discussion

In this case, the defendants contend that the non-diverse defendant, Lee Starnes, should be disregarded for the purpose of evaluating diversity jurisdiction under the fraudulent joinder doctrine. The fraudulent joinder doctrine "permits removal when a non-diverse party is (or has been) a defendant in the case." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999). The fraudulent joinder doctrine allows a district court to assume jurisdiction over a case even if complete diversity is lacking in order to dismiss non-diverse defendants and thereby retain proper diversity jurisdiction. Id. To establish that a defendant has been fraudulently joined, "the removing party must demonstrate either outright fraud in the plaintiff's pleading of jurisdictional facts or there is no possibility that the plaintiff can establish a cause of action against the instate defendant in state court." Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999). Clearly there has not been any outright fraud in any of the pleadings of the plaintiff regarding diversity. Instead, it appears, the defendants contend there is no possibility the plaintiff can establish a

cause of action against the in-state defendant.  "Fraudulent joinder" is a term of art used to describe the presence of a defendant who is not necessary for complete adjudication of the merits of plaintiff's claim, but whose presence, if allowed, would defeat diversity jurisdiction.  In order to determine whether the doctrine of fraudulent joinder would prevent remand, the court must determine whether " there is no possibility that the plaintiff would be able  to establish a cause of action against the in-state defendant."  Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993) See also Chevron U.S.A., Inc. v. Aguillard, 496 F.Supp. 1038, 1041 (M.D. La. 1980).

The defendants initially contend that because the plaintiff did not allege in his Alternative Second Cause of Action that the plaintiff asked the defendant Starnes for underinsured motorist coverage, then the plaintiff's allegations are insufficient to state a claim against Starnes.  The defendants cite Baggett v. Summerlin Insurance and Realty, Inc., 143 N.C. App. 43, 50, 545 S.E.2d 462, 467 (Tyson J., dissenting), rev'd per curiam, 354 N.C. 347, 554 S.E.2d 336 (2001)(adopting the dissent as authority). In Baggett the sole defendant was the insurance agency.  The agent had told the plaintiff insured that he was going to obtain "the necessary coverage" on a building owned by the plaintiff.  The building was later flooded and the plaintiff filed an action against the agent for failure to obtain flood insurance.  In the dissent Judge

Tyson stated as follows:

> An insurance agent has a duty to procure additional insurance for a policyholder at the request of the policyholder. Phillips v. State Farm Mut. Auto. Ins. Co., 129 N.C.App. 111, 113, 497 S.E.2d 325, 327 (1998) (citation omitted). This duty does not, however, obligate the insurer or its agent to procure a policy for the insured which had not been requested. Id. (Emphasis supplied) (citation omitted). Thus, the *51 insurance agent's duty to a policyholder is limited to the nature of the policyholder's request to the agent. Id.; Bigger v. Vista Sales & Mktg., Inc., 131 N.C.App. 101, 505 S.E.2d 891 (1998) (holding that insurance agent who procured requested liability insurance was not liable for failing to recommend workers' compensation coverage despite a 28-year business relationship between insurance agent and insured).

The plaintiff, on the other hand, has cited Bradley Freight Lines, Inc. v. Pope, Flynn & Company, Inc., 42 N.C.App. 285 (1979). In that case, the Court of Appeals stated the law as follows:

> As a general rule, an insurance agent who, with a view to compensation, undertakes to procure insurance for another owes the duty to his principal to exercise good faith and reasonable diligence, and any negligence or other breach of duty on his part which operates to defeat the insurance coverage procured or causes the principal to be underinsured will render the agent liable for the resulting loss. Anno.: 72 A.L.R.3d 747; Johnson v. George Tenuta and Co., 13 N.C.App. 375, 185 S.E.2d 732 (1972); Elam v. Smithdeal Realty Ins. Co., 182 N.C. 599, 109 S.E. 632 (1921). In Wiles v. Mullinax, 267 N.C. 392, 395, 148 S.E.2d 229, 232 (1966), Justice Sharp, now Chief Justice, writing for our Supreme Court stated: "Where an insurance broker becomes liable to his customer for failure to provide him with the promised insurance, the latter at his election, may sue for breach of contract Or for negligent default in the performance of a duty imposed by contract. (Emphasis added.)

> Proceeding in tort against the insured is therefore clearly actionable in North Carolina. In <u>Johnson v. Tenuta and Co.</u>, *supra*, Judge Parker emphasized that insured's remedies are not limited to breach of contract, but can be based on actionable negligence as well.

<u>Id.</u>, at 290-91.

The statutory scheme (applicable at the time relevant to this case) governing the procurement of underinsured motorist coverage makes a request by the insured for the procurement of underinsured motorist coverage completely unnecessary. In this case, the plaintiff alleges that he purchased a policy of automobile liability insurance with limits above the statutory minimum liability limits. Pltf's Cmpt. ¶ 7. In the defendants' answer, the defendants state this occurred on September 4, 2001, when the plaintiff (through his wife) requested that his automobile liability insurance limits be increased to $50,000 per person/$100,000 per accident. Deft's Answer ¶ 7. When that request was made, by operation of law, the defendant State Farm was required to offer the insured underinsured motorist coverage. Chapter 20-279.21(b)(4) of the North Carolina General Statutes then required that an insurance company

> [s]hall, in addition to the coverages set forth in subdivisions (2) and (3) of this subsection, provide underinsured motorist coverage to be used only with a policy that is written at limits that exceed those prescribed by subdivision (2) of this section and that afford uninsured motorist coverage as provided by subdivision (3) of this subsection, in an amount not to be less than the financial responsibility amounts for bodily injury liability as set forth in G.S. 20-279.5 nor greater than one million dollars

($1,000,000) as selected by the policy owner.

N.C.Gen.Stat. § 20-279.21(b)(4)(effective up to January 1, 2009). The requirement that the automobile liability insurance carrier provide underinsured motorist coverage in North Carolina is mandatory unless it is rejected by the insured in accordance with the provisions of N.C.G.S. § 20-279.21. <u>Maryland Casualty Co. v. Smith</u>, 117 N.C.App. 593, 598, 452 S.E.2d 318, 320 (1995). The provisions of the statute regarding rejection of coverage provide as follows:

> [t]he coverage required under this subdivision shall not be applicable where any insured named in the policy rejects the coverage. An insured named in the policy may select different coverage limits as provided in this subdivision. If the named insured does not reject underinsured motorist coverage and does not select different coverage limits, the amount of underinsured motorist coverage shall be equal to the highest limit of bodily injury liability coverage for any one vehicle in the policy. Once the option to reject underinsured motorist coverage or to select different coverage limits **is offered by the insurer**, the insurer is not required to offer the option in any renewal, reinstatement, substitute, amended, altered, modified, transfer, or replacement policy unless a named insured makes a written request to exercise a different option. The selection or rejection of underinsured motorist coverage by a named insured or the failure to select or reject is valid and binding on all insureds and vehicles under the policy.

N.C.Gen.Stat. § 20-279.21(b)(4)(emphasis added).

A reading of the statute indicates that the underinsured motorist coverage can be rejected by "any named insured". The plaintiff in his Complaint, alleges that he is the sole named insured. Pltf's Cmpt. ¶ 6. The statute further requires **the insurer**,

in this case State Farm, to offer the option to reject the underinsured motorist coverage or to select different coverage limits. Once that option is offered the insurer is not required to offer the option in any renewal, reinstatement, substitute, amended, altered, modified, transfer, or replacement policy unless a named insured makes a written request to exercise a different option. N.C.Gen.Stat. § 20-279.21(b)(4). Under the facts as alleged in this case, the insurer, State Farm, did not offer the option to any insured and the only allegation is that Defendant Starnes offered plaintiff's wife the option of selection or rejection of UIM coverage.

An examination of the Complaint shows that the plaintiff alleged Defendant Starnes was acting as the agent of the defendant State Farm . Pltf's Compt. ¶ 4. The defendants, in their joint answer, state Defendant Starnes was at all times an independent contractor in the business of procuring applications for insurance policies to be issued by State Farm or its affiliated entities. Deft's Answer ¶ 4. Applying the standard set forth in Capparelli, supra, to plaintiff's Complaint, it would be arguable that Defendant Starnes was acting in two capacities: first, as an insurance agent who, with a view to compensation, undertook to procure insurance for the plaintiff and thus owed the plaintiff a duty to exercise good faith and reasonable diligence; and two, he was acting in the capacity as an independent contractor in the employ of State Farm for the purpose of offering the option to reject underinsured

motorist coverage or select different insurance coverage on behalf of State Farm to the plaintiff. Defendant Starnes thus could be held liable to the plaintiff for any negligent act he committed in offering the option to reject underinsured motorist coverage or select different insurance coverages to the plaintiff.

The defendants contend a favorable decision in the plaintiff's declaratory judgment action against State Farm would render the claim against Starnes moot. The undersigned agrees with that statement. If the plaintiff wins his first cause of action against State Farm he can recover no more underinsured motorist coverage against the Defendant Starnes, as a plaintiff is not entitled to two remedies for one wrong.

The defendants further contend that if an adverse verdict is rendered against the plaintiff in the declaratory judgment action, the claim against Defendant Starnes would also be rendered moot. The undersigned respectfully disagrees with that conclusion. The North Carolina Supreme Court has clearly held that "for the torts of an independent contractor, as distinguished from a servant, it has long been said to be the general rule that there is no vicarious liability upon the employer." Hendricks v. Leslie Fay, Inc., 273 N.C. 59, 159 S.E.2d 362 (1968). The admission by both State Farm and Defendant Starnes that Defendant Starnes was an independent contractor is a critical admission to the plaintiff's Motion to Remand. The court has assumed, as the court must under Capparelli, that State Farm:

(1)     could follow through on its contention concerning Defendant Starnes and prove that Defendant Starnes is an independent contractor;

(2)     could prove that Defendant Starnes had undertaken the task of securing UIM acceptance-rejection as an independent contractor; and

(3)     would argue that any failure on the part of Defendant Starnes as an independent contractor is not attributable to State Farm, but to the negligence of Defendant Starnes.

It being clear under North Carolina law that there is no vicarious liability for the acts of an independent contractor, it is possible that plaintiff would have a viable cause of action against Defendant Starnes for his alleged negligence in the execution of his duty of care to plaintiff concerning the offering of UIM coverage to the insured.

The defendants have also argued that the alleged damages in this matter would be too speculative to sustain a claim against Starnes. That argument is directly contradicted by <u>Williams v. Nationwide Mutual Insurance Company</u>, 174 N.C.App. 601, 621 S.E.2d 644 (2005). The potential damages would be the highest available limit of underinsured motorist coverage, that being $1,000,000. <u>Williams</u> is also supported by <u>Hammond v. Wray</u>, 622 S.E.2d 599, 2008 W.L. 2582400 [3] which the Court of Appeals stated:

---

[3]     Due to the limits of ECF, a copy of such unpublished opinion is placed in the electronic record through reference to the Westlaw citation.

A total failure on the part of the insurer to provide an opportunity to reject UIM coverage or select different UIM policy limits violates the requirement that these choices be made by the policy owner. Such a failure should not invoke the minimum UIM coverage limits established in N.C.G.S. § 20-279.21(b)(4).

As set forth in both <u>Hammond</u> and <u>Williams</u> when there is a total failure to offer the insured the opportunity to reject or select UIM coverage the UIM coverage limits are $1,000,000.00 per person/$1,000,000.00 per accident.

Applying the law that precludes vicarious liability of an employer for the acts of an independent contractor reveals the following possible scenario. If this court accepts the arguments of the defendants against remand and finds there is fraudulent joinder, then the non-diverse defendant must be dismissed as a defendant. <u>Mayes v. Rapoport</u>, 198 F.3d 457, (4th Cir. 1999). Such a dismissal would leave State Farm as the only defendant. At that point State Farm could argue that its duty under the statute was contracted out to Defendant Starnes as an independent contractor, and that it is not liable for his failure to act or to act in the manner required by the statute. At that point, plaintiff would have a viable claim against Defendant Starnes in negligence for breach of the duty of care.

As stated in <u>Capparelli,</u> this court is not bound by the allegations of the pleadings, but may instead consider the entire record, in determining the basis of joinder by any means available. The undersigned has determined from, not only the

plaintiff's Complaint, but also the filings of the defendants that there is a significant possibility that the plaintiff could, in the alternative, establish a cause of action against the Defendant Starnes. Resolving all issues of fact and law in the plaintiff's favor, as the undersigned is required by law to do, the court finds that the plaintiff can establish a claim against the non-diverse Defendant Starnes. In so finding, the court determines that while a declaratory judgment in favor or against State Farm could resolve this case, the Federal Rules of Civil Procedure recognize alternative or even inconsistent pleading of claims. Fed.R.Civ.P. 8(d)(2)&(3). While recognizing that the state statutory claim may well resolve this case, the court has found no case law which holds that a claim sounding in tort against an insurance agent is extinguished by a statute which places a duty on the insurance company. Defendant Starnes was thus not fraudulently joined as a defendant. The undersigned will enter an order remanding this matter back to the state court for further proceedings as this court does not have complete diversity jurisdiction in this matter.

## VIII.  Nondelegable Duty Doctrine

At the hearing, counsel for defendants addressed the court's concerns as to liability for the acts independent contractor by arguing that it did not intend to assert the lack of vicarious liability as a defense to the declaratory judgment claim.   As discussed above, this court is compelled to view the possible claims plaintiff may

have, and while the court takes counsel at his word, he did not articulate the reason why the insurance company would not assert such defense.

Specifically, counsel for defendants did not argue that the duty created under Chapter 20-279.21(b)(4) is a nondelegable duty. There may be a very good reason for this, inasmuch as there is no case that provides that the statutory duty created that specific stature creates a nondelegable duty. However, review of North Carolina and federal case law reveals that the statutory duty at issue hear may be just such a duty. First, North Carolina clearly recognizes the nondelegable duty doctrine. In the context of a statutory duty for sheriffs to provide health care to inmates, the North Carolina Court of Appeals held as follows:

> This statute [§15A-221(a)] creates an affirmative duty on Sheriff's operating county jails to provide medical and mental health services to jail inmates. We hold that under *Medley*, this duty is nondelegable. "Where a principal has a nondelegable duty, one with whom the principal contracts to perform that duty is as a matter of law an agent for purposes of applying the doctrine of *respondeat superior*."

State v. Wilson, 183 N.C.App. 100, 104 (2007)(citation omitted). Second, the federal courts in North Carolina have recognized that, under state law, a "nondelegable duty" is a misnomer, inasmuch as the duty is always delegable, but the liability is not.

> "The difference between direct liability and a nondelegable duty is subtle but important . . . .The real effect of finding a duty to be nondelegable is to render not the duty, but the liability, not delegable; the person subject to a nondelegable duty is certainly free to delegate the duty, but will be liable to third parties for any negligence of the

delegatee, regardless of any fault on the part of the delegator . . . . Unfortunately, insufficient discipline is exercised by courts and commentators in the use of the term. The term nondelegable duty has traditionally been used to describe a form of vicarious liability on the part of the delegating party regardless of any fault on its part."

St. Paul Fire and Marine Insur. Co. v. Hanover Insur. Co., 187 F.Supp.2d 584, 592 (quoting Simmons v. Tuomey Regional Medical Center, 330 S.C. 115, 123 (1998), *affirmed as modified,* 341 S.C. 32 (2000)). The federal court in St. Paul, however, declined to follow Simmons in light of the decision of the North Carolina Supreme Court in Woodson v. Rowland, 329 N.C. 330 (1991), which identified general contractor liability in inherently dangerous activities as "direct not derivative." Id., at 593.

At this point, however, the nondelegable duty doctrine has not been raised. If defendants believe that this doctrine is what they were alluding to at the hearing, then they may file a stipulation that Chapter 20-279.21(b)(4) creates a nondelegable duty, i.e., that State Farm is liable for the acts of Defendant Starnes (or his employees) in discharging State Farm's statutory duty. If such is filed, then the court would agree that Defendant Starnes is "fictitiously joined," because at that point there is no possibility that the plaintiff could establish a cause of action against Defendant Starnes, Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999), inasmuch as the first cause of action would provide both State Farm and plaintiff with a vehicle

for complete resolution of the dispute between them. Further, if such a stipulation is filed, it would be appropriate for the parties to jointly move to strike this Order and moot the Motion to Remand, and file a Certificate of Initial Attorney Conference. Such should be accomplished within the 10 day period of stay for the filing of objections.

## ORDER

**IT IS, THEREFORE, ORDERED** that plaintiff's Amended Motion to Remand (#11) is **GRANTED** and it further **ORDERED** that the Clerk of Court shall certify copies of all pleadings in this matter to the Clerk of Superior Court of Haywood County for further proceedings as provided by law.

**Upon request of the parties made in open court, the Clerk of this court is respectfully instructed to not certify this Order of Remand for 10 days from receipt of such Order by respective counsel to allow time for the filing and service objections to this Order, Fed.R.Civ.P. 72(a), or for taking further action as provided above.**

Signed: February 9, 2009

Dennis L. Howell
United States Magistrate Judge